UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDEL MONEN YAHYA, Individually
and as Personal Representative of the Estate
of SAID MOSHIN YAHYA, DECEASED

              Plaintiffs,

v.

YEMENIA-YEMEN AIRWAYS, a Foreign
Corporation for Profit; NORTHWEST
AIRLINES, INC., a wholly-owned subsidiary
of Delta Airlines, Inc., a Foreign Corporation
for Profit; and GSA-ARABIAN HORIZONS
TRAVEL AND TOURISM, a Foreign
Corporation,,

              Defendants.
_____/

Case No. 08-14789

HONORABLE SEAN F. COX
United States District Judge

### AMENDED OPINION & ORDER GRANTING, WITH LEAVE TO AMEND, DEFENDANT NORTHWEST AIRLINES, INC.'S MOTION TO DISMISS [Doc. No. 6]

Plaintiff Abdel Monen Yahya ("Plaintiff"), as personal representative of the Estate of Said Mohsin Yahya ("Yahya") filed this cause of action on November 14, 2008 [Doc. No. 1], alleging that the defendant's refusal to land an international flight during a health emergency caused Yahya's death. The matter is before the Court on Defendant Northwest Airlines, Inc.'s ("Northwest") Motion to Dismiss[1] [Doc. No. 6], in which Northwest argues Plaintiff's causes of action against Northwest are preempted by the Montreal Convention[2]. The parties have fully

_____

[1] The remaining defendants are not a party to Northwest's Motion to Dismiss.

[2] The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S.Treaty Doc. No. 106-45, 2422 U.N.T.S. 350, commonly referred to as the "Montreal Convention."

1

briefed the issues, and a hearing was held on May 21, 2009.  For the reasons explained below, as the Montreal Convention provides the exclusive method for passengers to bring claims against airlines arising from international air travel, and further as the Montreal Convention bars punitive or exemplary damages, the Court **GRANTS** Northwest's Motion to Dismiss [Doc. No. 6].  However, the Court **GRANTS** Plaintiff's Motion to Amend Complaint [*See* Doc. No. 25] as to Defendant Northwest.

## BACKGROUND

Said Mohsin Yahya ("Yahya") died on November 14, 2006 while a passenger on a Yemenia-Yemen Airways ("Yemenia-Yemen") flight from Detroit, Michigan to Sana'a, Republic of Yemen.  Plaintiff alleges in this action that the Yemenia-Yemen flight crew, when advised by Yahya that his physical condition was life-threatening, informed Yahya that the flight would not make an emergency landing in Saudi Arabia on his account, but instead that Yahya would have to wait until the flight reached its final destination in Yemen. [Pl.'s Complaint, Doc. No. 1, ¶ 7].

Yahya purchased an airline ticket for the flight to Yemen on November 11, 2006 from GSA-Arabian Horizons Travel & Tourism ("GSA"), aboard Yemenia-Yemen. *Id*. at ¶ 10.  The flight was in two legs, with the first being operated by Northwest as a code-sharing partner with Yemenia-Yemen, traveling from Detroit, Michigan to Frankfurt, Germany on Northwest Airlines Flight 052 on November 13, 2006.  *Id*. at ¶ 12.  The second leg of the trip was on Yemenia-Yemen Flight 741, departing Frankfurt, Germany for Sana'a, Republic of Yemen, on November 14, 2006.  *Id*. at ¶ 13.

At some point in the second leg of the flight, Yahya "became seriously and critically ill and/or injured while a passenger on Yemenia-Yemen Airways Flight 741."  *Id*. at ¶3.  Yahya

2

advised the crew "that his physical condition was life threatening and that he required that the aircraft land so that he could be taken to a hospital immediately." *Id.* at ¶4. At that time the airplane was over Saudia Arabia, which Plaintiff claims had "an available hospital, which could have saved the life of [Yahya] had the. . . crew diverted Flight 741 and landed in Saudi Arabia as requested." *Id*. at ¶5.

In response to his medical emergency, Plaintiff claims the crew "intentionally, negligently and grossly negligently refused to land the aircraft in Saudi Arabia and instead advised [Yahya] over his objections that he would have to wait approximately one hour and 30 minutes for the aircraft to arrive" in Yemen. *Id*. at ¶6. Yahya died before the flight reached its final destination in Yemen. *Id*. at ¶3.

Yahya's son, Abdel Monen Yahya ("Plaintiff"), as personal representative of the estate of his father, filed the instant action on November 14, 2008 against Yemenia-Yemen, Northwest, Delta Airlines, Inc.[3], and GSA. [Doc. No. 1]. Plaintiff's complaint alleges the following seven causes of action: 1) negligence and gross negligence; 2) negligence per se; 3) false imprisonment; 4) intentional infliction of emotional distress; 5) respondeat superior; 6) [breach of] warranty; and 7) a cause of action for punitive or exemplary damages.

Northwest filed their Motion to Dismiss [Doc. No. 6] on February 9, 2009, arguing that, as all of Plaintiff's causes of action are state law claims, they are preempted by international treaty. Further, Northwest alleges that Plaintiff's claim for punitive or exemplary damages in Count VI of his Complaint is likewise barred by international treaty.

---

[3] Plaintiff dismissed Delta Airlines as a defendant to this action on February 9, 2009. [*See* Doc. No. 3].

3

STANDARD OF REVIEW

Northwest brings the instant motion pursuant to FED. R. CIV. P. 12(b)(6).  In assessing a

motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must treat all well-

pleaded allegations in the complaint as true.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th

Cir. 2001).  Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not

have a "reasonably founded hope" of making his or her case.  *Bell Atlantic v. Twombley*, 550

U.S. 554, 127 S.Ct. 1955, 1970 (2007).

ANALYSIS

I.        The Warsaw and Montreal Conventions.

Drafted in 1929, "[t]he Warsaw Convention was an international treaty created in the

early days of airline travel, which sought to create the conditions under which the then extremely

fragile industry could grow, by limiting airline accident liability."  *Weiss v. El Al Israel Airlines,

Ltd.*, 433 F.Supp.2d 361, 364 (S.D.N.Y. 2006)(internal citation omitted).

The Montreal Convention, effective November 4, 2003, "is not an amendment to the

Warsaw Convention," but rather "is an entirely new treaty that unifies and replaces the system of

liability that derives from the Warsaw Convention."  *Erlich v. American Airlines, Inc.*, 360 F.3d

366, 371 n.4 (2d Cir. 2004).  In "recogniz[ing] the importance of ensuring protection of the

interests of consumers . . . and the need for equitable compensation based on the principle of

restitution," *Weiss* at 365, the Montreal Convention has been described as "a treaty that favors

passengers rather than airlines."  *In re Air Crash at Lexington, Kentucky*, 2007 WL 1876456, *4

(E.D. Ky. June 26, 2007).

Though the Montreal Convention replaced the Warsaw Convention, it intentionally

4

"contain[ed] provisions which embrace similar language as the Warsaw Convention." *Watts v. American Airlines, Inc.*, 2007 WL 3019344, *2 (S.D. Ind. Oct. 10, 2007). This was done in an effort to avoid "a complete upheaval of the common law surrounding the Warsaw Convention." *Id.* (internal citation and quotation omitted). One such example of similar language, pertinent to the instant action, can be seen in Chapter 3, Article 17, Section 1 of the Montreal Convention (hereafter referred to simply as "Article 17"):

> The carrier is liable for damage sustained in case of death of bodily injury or a passenger upon condition only that *the accident which caused the death or bodily injury* took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention, Article 17 (emphasis added).[4]

The Montreal Convention, as did the Warsaw Convention, preempts remedies under domestic law, whether or not the application of the Montreal Convention will result in a recovery in a particular case. *El-Al Israel Airlines Ltd. v. Tseng*, 525 U.S. 155, 161 (1999); *see also Best v. BWIA West Indies Airways Ltd.*, 581 F.Supp.2d 359 (E.D.N.Y. 2008); *Baah v. Virgin Atlantic Airways Ltd.*, 473 F.Supp.2d 591 (S.D.N.Y. 2007). "[R]ecovery for a personal injury suffered on board an aircraft . . . if not allowed under the Convention, is not available at all." *Tseng* at 161.

This cause of action implicates the provisions of the Montreal Convention. Chapter 1, Article 1, Section 1 of the Montreal Convention states that "[t]his Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Further, Article 17 of the Montreal Convention specifically encompasses claims related to the death of a

---

[4] The language of Article 17 of the Warsaw Convention similarly provides: "The carrier shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by the passenger, *if the accident which caused the damage* so sustained took place on board the aircraft or in the course or any of the operations of embarking or disembarking." (emphasis added).

5

passenger.  Thus, the provisions of the Montreal Convention apply to the instant case.

     II.  <u>The Montreal Convention Preempts Plaintiff's State Law Claims</u>.

     As outlined by the Supreme Court in *Tseng*, "recovery for a personal injury suffered on board an aircraft . . . if not allowed under the Convention, is not available at all."  *Tseng* at 161. Numerous federal district and circuit courts have relied on *Tseng* in preempting state law causes of action which encompass claims covered by the Montreal Convention.

     In *Aikpitanhi v. Iberia Airlines of Spain*, 553 F.Supp.2d 872 (E.D. Mich. 2008), the plaintiffs, parents of the deceased who died on an international flight, claimed that the Alien Tort Claim Act, 28 U.S.C. § 1350, provided the Court with subject matter jurisdiction outside the boundaries of the Montreal Convention.  *Aikpitanhi*, 553 F.Supp.2d at 874.  This Court, relying upon the Supreme Court's *Tseng* opinion, roundly rejected an argument similar to that made by the Plaintiffs in the instant action:

> . . . [T]he Supreme Court has stated that the Montreal Convention, and its predecessor the Warsaw Convention, affords the exclusive remedy for any personal injury suffered on board an international flight or during any operations of embarking or disembarking.  In the present action, Plaintiffs allege the Decedent died as a passenger on board an international flight.  Pursuant to *Tseng*, Plaintiffs' exclusive remedy lies under the Montreal Convention.  As a result, Plaintiffs' arguments that a separate cause of action exists such that subject matter jurisdiction may be independently found are without merit.

*Aikpitanhi*, 553 F.Supp.2d at 879.

     In the instant case, stemming from the death of Yahya on an international flight, Plaintiff brings state law causes of action under theories of negligence (Count I), gross negligence (Count I), negligence *per se* (Count II), false imprisonment (Count III), intentional infliction of emotional distress (Count IV), *respondeat superior* liability (Count V), and breach of warranty (Count VI). [*See* Pl.'s Complaint, Doc. No. 1].  These causes of action, alleging state law tort

6

and contract claims, are preempted under the Montreal Convention as discussed in *Tseng* and *Aikpitanhi*.  Furthermore, each specific cause of action brought by Plaintiff in this case has previously been dismissed by a federal court in similar actions.[5]

Pursuant to *Tseng*, Plaintiff's exclusive remedy, if any, lies under the Montreal Convention.  For this reason, the Court **GRANTS** Northwest's Motion to Dismiss [Doc. No. 6] with respect to Plaintiff's state law causes of action [Counts I - VI].

III.  <u>The Montreal Convention Bars Plaintiff's Claim for Punitive/Exemplary Damages</u>.

In Count VII of his Complaint, Plaintiff brings a claim for punitive and/or exemplary damages.  Such damages, however, are expressly barred by the Montreal Convention:

> In the carriage of passengers, baggage, and cargo, any action for damages, however, founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . *In any such action, punitive, exemplary, or any other non-compensatory damages shall not be recoverable*.

Montreal Convention, Chapter 3, Article 29 (emphasis added).

Plaintiff's only reply to this argument by Northwest is found in ¶5 of his Response [Doc. No. 13], where he admits that "to the extent that the Montreal Convention is solely ultimately deemed to apply the cause of action for punitive and exemplary damages only may be barred." As discussed *supra*, Plaintiff's Complaint is controlled by the Montreal Convention.  The Court

---

[5] *See, e.g., Robinson v. Virgin Atlantic Airways, Ltd.*, 2006 WL 212295, *3 (S.D.N.Y. Jan. 27, 2006) (holding *Tseng* preempts state law negligence claim); *Kaur v. All Nippon Airways Co., Ltd.*, 2006 WL 997329, *3 (N.D. Cal. April 17, 2006) (gross negligence claim preempted); *Igwe v. Northwest Airlines, Inc.*, 2007 WL 43811 (S.D. Tex. Jan. 4, 2007) (negligence *per se* claim preempted); *Tseng*, 525 U.S. at 176 (false imprisonment claim preempted); *Bloom v. Alaska Airlines*, 2002 WL 1136727, *2 (9th Cir. May 30, 2002)(unpublished) (intentional infliction of emotional distress claim preempted); *Shirobokova v. CSA Czech Airlines, Inc.*, 376 F.Supp.2d 439, 442 (S.D.N.Y. 2005) (breach of warranty claim preempted).  Plaintiff's claim for "respondeat superior" liability in Count V likewise fails for want of an underlying cause of action under tort law.

therefore **GRANTS** Northwest's Motion to Dismiss [Doc. No. 6] with respect to Plaintiff's claim for punitive or exemplary damages [Count VII].

IV.     The Court Grants Plaintiff Leave to Amend His Complaint.

In his supplementary brief [Doc. No. 25] filed on June 30, 2009, Plaintiff argues in the alternative that ". . . Plaintiffs should be given an opportunity to amend the Complaint to precisely describe the negligence or other wrongful act or omission of the carrier or its servants or agents pursuant to Article 21 of the convention." [Doc. No. 25, p.6]. Rule 15 of the Federal Rules of Civil Procedure permits a party to amend its pleadings with the Court's leave, and instructs that courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

Article 17 of the Montreal Convention imposes liability on an air carrier for a passenger's death or bodily injury caused by an "accident" that occurred in connection with international flight. The issue in this case is, therefore, whether the events surrounding Yahya's death could constitute such an "accident." If not, a grant by the Court of leave for the Plaintiff to amend his Complaint would be futile.

Northwest argues that "not every injury sustained during an airplane flight constitutes an accident for purposes of liability under the Montreal Convention." [Def.'s Br., Doc. No. 6, p.10.]. While true, Northwest goes on to argue that "Plaintiff's lawsuit and allegations do not present any facts of an accident." *Id*. at 11. In their reply brief, Northwest further alleges that "[f]ailure to divert is not an accident." [Def.'s Reply, Doc. No. 17, p.4, *citing Krys. v. Lufthansa*, 119 F.3d 1515 (11th Cir. 1997)]. Plaintiff argues, on the other hand, that the Supreme Court's holding in *Olympic Airways v. Husain*, 540 U.S. 644 (2004) stands for the proposition that an airline's refusal to assist a passenger in need of medical treatment can constitute an "accident"

8

under the Montreal Convention.

The United States Supreme Court first examined the scope of the word "accident" within Article 17 of the Montreal Convention in *Air France v. Saks*, 470 U.S. 392 (1985).  In *Saks*, a passenger experienced severe inner ear pain during an international flight's descent, eventually becoming permanently deaf in one ear as a result.  All available evidence indicated that the aircraft's pressurization system had operated in the usual manner.  *Saks* at 394-95.  In denying recovery to the passenger, the Supreme Court held that "liability under Article 17 of the Warsaw Covnention arises only if a passenger's injury is caused by an *unexpected or unusual event or happening that is external to the passenger*."  *Id*. at 405 (emphasis added).

*Saks* did allow, however, for fact questions as to the "cause" of the accident to be decided at trial, as "[i]n cases where there is contradictory evidence, it is for the trier of fact to decide whether an accident as here defined caused the passenger's injury."  *Id*. (internal quotation omitted).  However, where the injury "indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft," as was the case in *Saks*, "it has not been caused by an accident."  *Id*. at 406.

The Supreme Court confronted the very issue faced in the instant case in *Olympic Airways v. Husain*, 540 U.S. 644 (2004).  In *Husain*, an athsmatic passenger died after a stewardess refused, despite the passenger's repeated pleas and explanation of his health problems, to move his seat away from the smoking section on an international flight.  The Supreme Court framed the issue in *Husain*, as well as their answer to that issue, as follows:

> The issue we must decide is whether the "accident" condition precedent to air carrier liability under Article 17 is satisfied when the carrier's unusual and unexpected refusal to assist a passenger is a link in a chain of causation resulting in a passenger's pre-existing medical condition being aggravated by exposure to a

9

normal condition in the aircraft cabin.  We conclude that it is.

*Husain* at 646.  Specifically, the Supreme Court held that "[t]he relevant accident inquiry under *Saks* is whether there is an unexpected or unusual event or happening.  The rejection of an explicit request for assistance would be an event or happening under the ordinary and usual definitions of these terms."  *Id*. at 654-55.

Other cases, citing *Husain*, have found an airline's refusal to assist with a passenger's medical emergency constituted an "accident" under Article 17.  *Watts v. American Airlines, Inc.*, 2007 WL 3019344 (S.D. Ind. Oct. 10, 2007) found that the airline's failure to respond to a passenger's heart attack could constitute a link in the chain causing an "accident."  *Watts* at *4. A similar holding was reached with respect to another heart attack case, *Fulop v. Malev Hungarian Airlines*, 175 F.Supp.2d 651 (S.D.N.Y. 2001).  *Fulop* stated as follows:

> . . . in this case the crew is alleged to have been called upon to exercise precisely such additional and divergent judgements and to have made the choice to continue the Flight to its appointed destination, presumably aware of the stricken passenger's condition.  In other words, the carrier made a deliberate choice to operate the flight in one way rather than another, to pursue a course under one procedure instead of another.

*Fulup* at 670.

Northwest argues that "[f]ailure to divert is not an accident."  [Def.'s Reply Br., Doc. No. 17, p.4].  In support of this position, Northwest relies upon *Krys v. Lufthansa*, 119 F.3d 1515, 1521 (11th Cir. 1997), where the Eleventh Circuit held that an airline crew's refusal to divert based upon a heart attack was not an accident.  While Northwest accurately cites *Krys*, the Eleventh Circuit's holding in that case was decided seven years before *Husain*.

While Plaintiff's Complaint does not specify exactly what malady Yahya suffered from while en route to the Republic of Yemen, Plaintiff does allege that Yahya made the Yemenia-

10

Yemen crew aware of his condition, and that he needed to land immediately to receive medical attention. [Pl.'s Complaint, Doc. No. 1, ¶4]. Faced with this request, the Yemenia-Yemen flight crew instead told Yahya he would need to wait for an hour and a half while the airplane finished its flight to Sana'a. *Id*. at ¶6. Plaintiff also alleges that this failure, in part, contributed to the death of Yahya. *Id*. at ¶7.

On these facts, under *Husain*, a jury could find the Yemenia-Yemen crew's decision not to land the airplane in Saudi Arabia was an "event or happening" constituting an "accident" under Article 17 of the Montreal Convention. As such, the Court finds that Plaintiff can make a *prima facie* cause of action under the Montreal Convention, and leave to amend Plaintiff's Complaint would therefore not be futile.

The Court notes that at least one other district court, when faced with similar state law causes of action subject to dismissal in light of *Tseng*, has granted leave for the plaintiff to amend their Complaint to comport with the Warsaw or Montreal Conventions:

> Accordingly, plaintiff's state law claims are preempted, and these claims are DISMISSED WITH PREJUDICE. If plaintiff wishes to pursue a claim under the Warsaw Convention, plaintiff may file an amended complaint on or before May 15, 2006.

*Kaur v. All Nippon Airways Co., Ltd.*, 2006 WL 997329, *3 (N.D. Cal. April 12, 2006).

The Court further notes that Plaintiff's Complaint admits that this cause of action may be governed, "in whole or in part," by the Montreal Convention. [Pl.'s Complaint, Doc. No. 1, ¶25]. This pleading, coupled with the underlying facts pled in Plaintiff's Complaint, placed Northwest on notice of a possible Montreal Convention claim before the Convention's two-year statute of limitations expired. Given these facts, the Court **GRANTS LEAVE** for Plaintiff to amend his Complaint to comport with the Montreal Convention. If Plaintiff wishes to pursue a claim under

11

the Montreal Convention, Plaintiff must file an amended complaint **on or before Friday,**

**September 11, 2009**.

CONCLUSION

For the reasons explained above, this Court **GRANTS** Northwest's Motion to Dismiss

[Document No. 6], and **GRANTS LEAVE** for Plaintiff to file an amended Complaint

comporting with the Montreal Convention against Defendant Northwest **on or before Friday,**

**September 11, 2009**.

**IT IS SO ORDERED**.


s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 25, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on
August 25, 2009, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager