UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ABDEL MONEN YAHYA, Individually and as Personal Representative of the Estate of SAID MOSHIN YAHYA, DECEASED<br><br>Plaintiffs,<br><br>v.<br><br>YEMENIA-YEMEN AIRWAYS, a Foreign Corporation for Profit; NORTHWEST AIRLINES, INC., a wholly-owned subsidiary of Delta Airlines, Inc., a Foreign Corporation for Profit; and GSA-ARABIAN HORIZONS TRAVEL AND TOURISM, a Foreign Corporation,,<br><br>Defendants.<br>_____/ | Case No. 08-14789<br><br>HONORABLE SEAN F. COX<br>United States District Judge |

## OPINION & ORDER GRANTING, WITH LEAVE TO AMEND, DEFENDANT ARABIAN HORIZONS TRAVEL AND TOURISM'S MOTION TO DISMISS [Doc. No. 21]

Plaintiff Abdel Monen Yahya ("Plaintiff"), as personal representative of the Estate of Said Mohsin Yahya ("Yahya") filed this cause of action on November 14, 2008 [Doc. No. 1], alleging that the defendants' refusal to land an international flight during a health emergency caused Yayha's death. The matter is before the Court on Defendant GSA-Arabian Horizons Travel and Tourism, Inc.'s ("Arabian") Motion to Dismiss[1] [Doc. No. 21], in which Arabian

---

[1] Northwest Airlines previously filed a Motion to Dismiss, in which the Court also dismissed the Plaintiff's state-law causes of action but granted Plaintiff leave to file an amended complaint under the Montreal Convention. The remaining defendants are not a party to Arabian's instant Motion to Dismiss.

1

argues Plaintiff's causes of action are preempted by the Montreal Convention[2]. The parties have fully briefed the issues, and a hearing was held on August 27, 2009. For the reasons that follow, the Court **GRANTS** Arabian's Motion to Dismiss [Doc. No. 21], but grants Plaintiff leave to file an amended Complaint.

BACKGROUND

Said Mohsin Yahya ("Yahya") died on November 14, 2006 while a passenger on a Yemenia-Yemen Airways ("Yemenia-Yemen") flight from Detroit, Michigan to Sana'a, Republic of Yemen. Yahya alleges in this action that the Yemenia-Yemen flight crew, when advised by Yahya that his physical condition was life-threatening, advised Yahya that the flight would not make an emergency landing in Saudi Arabia on his account, but instead that Yahya would have to wait until the flight reached its final destination in Yemen. [Pl.'s Complaint, Doc. No. 1, ¶ 7].

Yahya purchased an airline ticket for the flight to Yemen on November 11, 2006 from Arabian, abord Yemenia-Yemen. *Id*. at ¶ 10. The flight was in two legs, with the first being operated by Northwest as a code-sharing partner with Yemenia-Yemen, traveling from Detroit, Michigan to Frankfurt, Germany on Northwest Airlines Flight 052 on November 13, 2006. *Id*. at ¶ 12. The second leg of the trip was on Yemenia-Yemen Flight 741, departing Frankfurt, Germany for Sana'a, Republic of Yemen, on Novemebr 14, 2006. *Id*. at ¶ 13.

At some point in the second leg of the flight, Yahya "became seriously and critically ill and/or injured while a passenger on Yemenia-Yemen Airways Flight 741." *Id*. at ¶3. Yahya

---

[2] The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S.Treaty Doc. No. 106-45, 2422 U.N.T.S. 350, commonly referred to as the "Montreal Convention."

advised the crew "that his physical condition was life threatening and that he required that the aircraft land so that he could be taken to a hospital immediately." *Id.* at ¶4. At the time, the airplane was over Saudia Arabia, which Yahya claims had "an available hospital, which could have saved the life of [Yahya] had the. . . crew diverted Flight 741 and landed in Saudi Arabia as requested." *Id.* at ¶5.

In response to his medical emergency, Yahya claims the crew "intentionally, negligently and grossly negligently refused to land the aircraft in Saudi Arabia and instead advised [Yahya] over his objections that he would have to wait approximately one hour and 30 minutes for the aircraft to arrive" in Yemen. *Id.* at ¶6. Yahya died before the flight reached its final destination in Yemen. *Id.* at ¶3.

Yahya's son, Abdel Monen Yahya ("Plaintiff"), as personal representative of the estate of his father, filed the instant action on November 14, 2008 against Yemenia-Yemen, Northwest, Delta Airlines, Inc.[3], and GSA. [Doc. No. 1]. Plaintiff's complaint alleges the following seven causes of action: 1) negligence and gross negligence; 2) negligence per se; 3) false imprisonment; 4) intentional infliction of emotional distress; 5) respondeat superior; 6) [breach of] warranty; and 7) cause of action for punitive or exemplary damages.

Arabian filed the instant motion to dismiss [Doc. No. 21] on June 3, 2009, arguing that the Plaintiff did not properly serve them with process. Arabian further argues that the Montreal Convention governs Plaintiff's cause of action in its entirety, and that "said convention[] provide[s] a remedy against only the air carrier." [Def.'s Br., Doc. No. 21, p.2].

---

[3] Plaintiff dismissed Delta Airlines as a defendant to this action on February 9, 2009. [*See* Doc. No. 3].

STANDARD OF REVIEW

Arabian brings the instant motion pursuant to FED. R. CIV. P. 12(b)(5) and 12(b)(6). In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true. *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making his or her case. *Bell Atlantic v. Twombley*, 550 U.S. 554, 127 S.Ct. 1955, 1970 (2007).

ANALYSIS

While Arabian was not properly served with process in the instant case, the Court will grant Plaintiff additional time in which to properly serve Arabian. Because Plaintiff's claims against Arabian are governed by the Montreal Convention, the Court **GRANTS** Arabian's motion dismissing Plaintiff's state law causes of action and request for punitive and/or exemplary damages, but grants Plaintiff leave to amend his complaint.

I. Plaintiff's Improper Service of Process on Defendant Arabian.

Arabian argues that Plaintiff failed to serve process upon them as required by FED. R. CIV. P. 4(h). [Def.'s Br., Doc. No. 21, p.3]. As such, Arabian argues that Plaintiff's case should be dismissed pursuant to FED. R. CIV. P. 12(b)(5). Though the Court finds service upon Arabian to have been improper, the Court **DENIES** Arabian's Rule 12(b)(5) motion.

Plaintiff's certificate of service/summons returned with regard to Arabian [*See* Def.'s Ex. 6, Doc. No. 21] asserts that Arabian was served on January 12, 2009 at 203 Court Street in Brooklyn, New York upon authorized agent Mr. Abdo Alzundani ("Alzundani"). As Arabian argues, however, Alzundani "is neither the registered agent nor an officer or resident agent,

4

director, trustee, or person in charge" of Arabian. Rather, Alzudani is an agent of a corporation known as Arabian Horizons Travel, Inc. While Plaintiff alleges that this corporation and Arabian have a common owner, the Republic of Yemen, no proof of this allegation has been provided. Furthermore, Arabian Horizons Travel, Inc. is not a party to this suit, and is a separate entity from Arabian.

Plaintiff sued Arabian, a corporation organized under the laws of the state of Michigan. Michigan's Department of Energy, Labor and Economic Growth ("DELEG"), the state agency that maintains records regarding Michigan corporations, shows that Arabian's registered office is at 10148 Vernor Ave., Dearborn, Michigan. This is the same address at which the decedent claims to have purchased his airline ticket. [*See* Pl.'s Complaint, Doc. No. 1, ¶10]. Further, DELEG records show Arabian's resident agent is Mohmood Ali Al-Gahaem, not Alzundani. Finally, no evidence has been proffered that Alzundani is an officer, director, trustee or person in charge of GSA. Thus, the Court finds that service was not properly made upon Arabian by Plaintiff.

Under FED. R. CIV. P. 4(m), Plaintiff had 120 days from the date the complaint was filed to serve Arabian:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant *or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extent the time for service for an appropriate period*.

FED. R. CIV. P. 4(m) (emphasis added). As the Complaint in this case was filed on November 14, 2008, Plaintiff had until March 14, 2009 to properly serve Arabian with the summons. The 120 day limit has since expired, and as explained above, Plaintiff did not properly serve Arabian with

5

a summons. Thus, Plaintiff's claims against GSA are subject to Rule 4(m).

While scholars have noted that no clear guidelines exist for the Court in considering the alternative outcomes allowed by Rule 4(m), "judicial notions of fairness provide some guidance as to how it should be approached." 4B Charles A. Wright, Arthur R. Miller, *Federal Practice & Procedure* § 1137. Professors Wright and Miller further elaborate as follows:

> The liberality of the Federal Rules of Civil Procedure allow minor defects in service to be overlooked, *as long as the defendant received actual notice of the lawsuit and has an opportunity to defend the action*. That should be the hallmark of practice under Rule 4(m), particularly when the defect in the service does not appear to be intentional.

*Id*. (emphasis added).

In the instant case, Arabian has brought forth no evidence that Plaintiff's failure to properly serve them was in bad faith. Further, as discussed *infra*, Plaintiff's claims will be governed by the Montreal Convention, and thus will be barred by its two-year statute of limitations should the Court dismiss without prejudice under Rule 4(m). Finally, as discussed by Professors Wright and Miller, *Arabian actually received notice of the lawsuit pending against them*. Arabian filed an answer to Plaintiff's Complaint [Doc. No. 16] on February 28, 2009, before the end of Plaintiff's 120 period in which they had to serve Arabian. As such, while Arabian was not properly served, they "received actual notice of the lawsuit and ha[d] an opportunity to defend the action." *Id*.

This Court has previously allowed a plaintiff leave to effect proper service upon an improperly served defendant. In *Vasher v. Kabacinski*, 2007 WL 295006 (E.D. Mich. Jan. 29, 2007), the Court noted that "if the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later." *Vasher* at *3,

quoting *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952). The Court gave the plaintiff in that case an additional 28 days in which to serve the defendant, with the understanding that the plaintiff's claims would be dismissed without prejudice if service was not completed in that time frame. *Id*.

For these reasons, the Court **DENIES** Arabian's Motion to Dismiss for Improper Service of Process, and **GRANTS** Plaintiff leave to properly serve Arabian with process **no later than Friday, November 20, 2009.** If Plaintiff does not properly serve Arabian with process by November 20, 2009**,** the Court will dismiss Plaintiff's claims against Arabian without prejudice**.**

II. <u>Plaintiff's Claims Against Arabian Are Subject to The Montreal Convention</u>.

Created in 1929, "[t]he Warsaw Convention was an international treaty created in the early days of airline travel, which sought to create the conditions under which the then extremely fragile industry could grow, by limiting airline accident liability." *Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 364 (S.D.N.Y. 2006)(citation omitted).

The Montreal Convention, effective November 4, 2003, "is not an amendment to the Warsaw Convention," but rather "is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Erlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). In "recogniz[ing] the importance of ensuring protection of the interests of consumers . . . and the need for equitable compensation based on the principle of restitution," *Weiss* at 365, the Montreal Convention has been described as "a treaty that favors passengers rather than airlines." *In re Air Crash at Lexington, Kentucky*, 2007 WL 1876456, *4 (E.D. Ky. June 26, 2007).

Though the Montreal Convention replaced the Warsaw Convention, it intentionally

7

"contain[ed] provisions which embrace similar language as the Warsaw Convention." *Watts v. American Airlines, Inc.*, 2007 WL 3019344, *2 (S.D. Ind. Oct. 10, 2007). This was done in an effort to avoid "a complete upheaval of the common law surrounding the Warsaw Convention." *Id.* (internal citation and quotation omitted). One such example of similar language, pertinent the instant action, can be seen in Chapter 3, Article 17, Section 1 of the Treaty (hereafter referred to simply as "Article 17"):

> The carrier is liable for damage sustained in case of death of bodily injury or a passenger upon condition only that *the accident which caused the death or bodily injury* took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention, Article 17 (emphasis added).[4]

The Montreal Convention, as did the Warsaw Convention, preempts the remedies of domestic law, whether or not the application of the Montreal Convention will result in a recovery in a particular case. *El-Al Israel Airlines Ltd. v. Tseng*, 525 U.S. 155, 161 (1999); *see also Best v. BWIA West Indies Airways Ltd.*, 581 F.Supp.2d 359 (E.D.N.Y. 2008); *Baah v. Virgin Atlantic Airways Ltd.*, 473 F.Supp.2d 591 (S.D.N.Y. 2007). "[R]ecovery for a personal injury suffered on board an aircraft . . . if not allowed under the Convention, is not available at all." *Tseng* at 161.

This cause of action implicates the provisions of the Montreal Convention. Chapter 1, Article 1, Section 1 of the Montreal Convention states that "[t]his Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Further,

---

[4] The language of Article 17 of the Warsaw Convention similarly provides: "The carrier shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by the passenger, *if the accident which caused the damage* so sustained took place on board the aircraft or in the course or any of the operations of embarking or disembarking." (emphasis added).

8

Article 17 of the Montreal Convention specifically encompasses claims related to the death of a passenger. Thus, the provisions of the Montreal Convention apply to the instant case.

   III.   The Flight Crew's Alleged Refusal to Assist Yayha Is an "Accident".

Article 17 of the Montreal Convention imposes liability on an air carrier for a passenger's death or bodily injury caused by an "accident" that occurred in connection with international flight. The issue in this case is, therefore, whether the Yemenia-Yemen flight crew's refusal to land Flight 741 in Saudi Arabia, in part alleged to have contributed to Yahya's death, constitutes such an "accident."

The United States Supreme Court first examined the scope of the word "accident" within Article 17 of the Montreal Convention in *Air France v. Saks*, 470 U.S. 392 (1985). In *Saks*, a passenger experienced severe inner ear pain during the international flight's descent, eventually becoming permanently deaf in one ear. All available evidence indicated that the aircraft's pressurization system had operated in the usual manner. *Saks* at 394-95. In denying recovery to the passenger under the Montreal Convention, the Supreme Court held that "liability under Article 17 of the Warsaw Covnention arises only if a passenger's injury is caused by an *unexpected or unusual event or happening that is external to the passenger*." *Id*. at 405 (emphasis added).

*Saks* did allow for fact questions as to the "cause" of the accident to be decided at trial, as "[i]n cases where there is contradictory evidence, it is for the trier of fact to decide whether an accident as here defined caused the passenger's injury." *Id*. (internal quotation omitted). However, where the injury "indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft," as was the case in *Saks*, "it has not

9

been caused by an accident." *Id*. at 406.

The Supreme Court confronted the very issue faced in the instant case in *Olympic Airways v. Husain*, 540 U.S. 644 (2004). In *Husain*, an athsmatic passenger died after a stewardess refused, despite the passenger's repeated pleas and explanation of his health problems, to move his seat away from the smoking section on an international flight. The Supreme Court framed the issue in *Husain*, as well as their answer to that issue, as follows:

> The issue we must decide is whether the "accident" condition precedent to air carrier liability under Article 17 is satisfied when the carrier's unusual and unexpected refusal to assist a passenger is a link in a chain of causation resulting in a passenger's pre-existing medical condition being aggravated by exposure to a normal condition in the aircraft cabin. We conclude that it is.

*Husain* at 646. Specifically, the Supreme Court held that "[t]he relevant accident inquiry under *Saks* is whether there is an unexpected or unusual event or happening. The rejection of an explicit request for assistance would be an event or happening under the ordinary and usual definitions of these terms." *Id*. at 654-55.

Other cases, citing *Husain*, have found an airline's refusal to assist with a passenger's medical emergency constituted an "accident" under Article 17. *Watts v. American Airlines, Inc.*, 2007 WL 3019344 (S.D. Ind. Oct. 10, 2007) found that the airline's failure to respond to a passenger's heart attack could constitute a link in the chain causing the "accident." *Watts* at *4. A similar holding, in finding the existence of an "accident," was reached with respect to another heart attack case, *Fulop v. Malev Hungarian Airlines*, 175 F.Supp.2d 651 (S.D.N.Y. 2001). *Fulop* stated as follows:

> . . . in this case the crew is alleged to have been called upon to exercise precisely such additional and divergent judgements and to have made the choice to continue the Flight to its appointed destination, presumably aware of the stricken passenger's condition. In other words, the carrier made a deliberate choice to

10

>operate the flight in one way rather than another, to pursue a course under one procedure instead of another.

*Fulup* at 670.

While Plaintiff's Complaint does not specify exactly what malady Yahya suffered from while en route to the Republic of Yemen, Plaintiff does allege that Yahya made the Yemenia-Yemen crew aware of his condition, and that he needed to land immediately to receive medical attention. Faced with this request, the Yemenia-Yemen flight crew instead told Yahya he would need to wait for an hour and a half while the airplane finished its anticipated flight to Sana'a. Plaintiff also alleges that this failure, in part, contributed to the death of Yahya. Under *Husain*, the Yemenia-Yemen crew's decision not to land the airplane in Saudi Arabia thus constitutes an "event or happening" required for an "accident" to be found under Article 17 of the Montreal Convention. For this reason, the Court **DENIES** Arabian's Motion to Dismiss on these grounds.

    IV.  Arabian Can be Liable for An "Accident" Under the Montreal Convention.

Arabian argues that the Montreal Convention does not allow for plaintiffs to recover from a travel agent for an "accident" occurring on an international flight. ". . . Plaintiff failed to cite a single case for the proposition that . . . the ticket agent could be liable for the in-flight death of the ticket purchaser." [Def.'s Reply, Doc. No. 27, p.3].

In a case almost directly on point, the Southern District of Florida found that a travel agency could be held liable under the Montreal Convention for the death of a passenger. *See In re West Caribbean Airways, S.A. et al*, 619 F.Supp.2d 1299 (S.D. Fla. 2007). *West Caribbean Airways* concerned an airplane crash in 2005 in Venezuela of West Caribbean Airways Flight 708 while en route from Panama to Martinique. The Southern District of Florida began by

noting the scope of Article 39 of the Montreal Convention:

> The provisions of this chapter apply when a person (hereinafter referred to as "the contracting carrier") as a principal makes a contract of carriage by this Convention with a passenger or consignor or with a person acting on behalf of the passenger or consignor, and another person (hereinafter referred to as "the actual carrier") performs, by virtue of the authority frm the contracting carrier, the whole or part of the carriage. . . .

*West Caribbean Airways*, 619 F.Supp.2d at 1305-06, citing Montreal Convention, Article 39.

In the instant case, as was found in *West Caribbean Airways*, Arabian made a contract of carriage with the decedent for a flight to Yemen, and the "actual carriers" - Northwest Airlines and Yemenia-Yemen Airways - performed the "carriage" of the decedent. As such, Arabian can be held liable under the Montreal Convention for Plaintiff's cause of action, and Arabian's Motion to Dismiss is **DENIED** on that ground.

    IV.    The Montreal Convention Bars Plaintiff's Claim for Punitive/Exemplary Damages

In Count VII of his Complaint, Plaintiff brings a claim for punitive and/or exemplary damages. Such damages, however, are expressly barred by the Montreal Convention:

> In the carriage of passengers, baggage, and cargo, any action for damages, however, founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . *In any such action, punitive, exemplary, or any other non-compensatory damages shall not be recoverable*.

Montreal Convention, Chapter 3, Article 29 (emphasis added). As such, Plaintiff's Count VII, for punitive and exemplary damages, are **DISMISSED**.

    V.    The Court Gants Plaintiff Leave to Amend His Complaint.

The Court has already granted Plaintiff leave to amend his complaint against Defendant Northwest Airlines in this action. [*See* Doc. No. 28]. Other federal courts, when faced with

similar state law causes of action subject to dismissal in light of *Tseng*, have also granted leave for the plaintiff to amend their Complaint to comport with the Warsaw or Montreal Conventions:

> Accordingly, plaintiff's state law claims are preempted, and these claims are DISMISSED WITH PREJUDICE. If plaintiff wishes to pursue a claim under the Warsaw Convention, plaintiff may file an amended complaint on or before May 15, 2006.

*Kaur v. All Nippon Airways Co., Ltd.*, 2006 WL 997329, *3 (N.D. Cal. April 12, 2006).

The Court further notes that Plaintiff's Complaint admits that this cause of action may be governed, "in whole or in part," by the Montreal Convention. [Pl.'s Complaint, Doc. No. 1, ¶25]. This pleading, coupled with the underlying facts pled in Plaintiff's Complaint, placed Arabian on notice of a possible Montreal Convention claim before the Convention's two-year statute of limitations expired. Given these facts, the Court **GRANTS LEAVE** for Plaintiff to amend his Complaint against Arabian to comport with the Montreal Convention.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** GSA's Motion to Dismiss [Document No. 21], and **GRANTS LEAVE** for Plaintiff to file an amended Complaint comporting with the Montreal Convention.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: October 20, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on

October 20, 2009, by electronic and/or ordinary mail.

                                        <u>S/Jennifer Hernandez</u>
                                        Case Manager